■ CITY OF NEW YORK et al., Appellants, v LOVE SHACK et al., Respondents. [729 NYS2d 37] —Order, Supreme Court, Bronx County (Douglas McKeon, J.), entered March 29, 2000, which denied plaintiff's motion for a preliminary injunction to close down the operation of an "adult establishment" at defendants' premises as a violation of the New York City Zoning Resolution, unanimously reversed, on the law, without costs, and the motion granted.

In January 1999, defendants applied for a building permit, under a self-certification procedure, to renovate a warehouse on Provost Avenue in the Bronx into retail premises. The application failed to disclose defendants' intention to use this property as an adult book store, to which certain restrictions would have applied.

The New York City Department of Buildings (DOB) has a published policy (Operations Policy and Procedure Notice [OPPN] No. 6/96) that makes the self-certification process unavailable to applicants for adult establishments; furthermore, it reinforces the City Zoning Resolution (§ 42-01 [c]), which prohibits the location of such an establishment within 500 feet of "another adult establishment." OPPN No. 6/96 provides that in reviewing an application to create, enlarge or extend an adult establishment, "An objection shall be raised if there *exists* another adult establishment within 500 feet of the proposed use" (emphasis added).

Based upon the deceptively incomplete application, DOB issued to defendants a building permit in March 1999, and a temporary certificate of occupancy the following month. Only thereafter did DOB learn that defendants were operating an adult book and video store at the premises.

On May 14, 1999, defendants were notified by DOB's Bronx Commissioner that they were in violation of the Zoning Resolution due to proximity with another adult establishment which had not yet opened, but which had already been issued a permit for that purpose four months earlier. Defendants objected that they were not in violation of the 500-foot rule, inasmuch as the other establishment had not yet opened. The Commissioner rejected that argument in a letter to defendants' counsel on June 21, and in a letter directly to defendants on June 25, the latter missive noting that a temporary certificate of occupancy had been issued to the "other" establishment just two days ago.

On June 30, 1999, counsel indicated to the Commissioner that defendants would appeal the rejection, and that defendants would meanwhile continue operating within the "60/40 guidelines." This was a reference to the definition of an "adult establishment," in Zoning Resolution § 12-10, as one that devotes a substantial portion of its business to an enterprise such as an adult book store, which is in turn defined as one in which a substantial portion of the stock-in-trade consists of materials that depict or describe sexual activities. In August 1998, DOB issued OPPN No. 6/98, which further defined "substantial portion" of an establishment as at least 40% of the retail floor space, and "substantial portion" of an adult book store as at least 40% of the inventory (*see, City of New York v Les Hommes*, 94 NY2d 267, 271). A detailed inventory inspection of the premises in August 1999 found 39.6% of the merchandise to be adult material; no calculation was given as to the floor-space percentage.

Defendants amended their permit application on July 7, 1999, to indicate the correct intended use of the premises as an "adult retail establishment." But they never did take an administrative appeal from the Commissioner's ruling.

The "other" business entity referred to by the Commissioner was Junior's, a topless bar on East 233rd Street, whose owners had first notified DOB of intention to open an adult establishment when they applied for an amended renovation permit in August 1998. That permit was issued on January 12, 1999. The question presented herein is whether the reference in the Zoning Resolution and the DOB policy directive to an existing adult establishment contemplates one that is already open for business, or one that has merely been approved for later opening. DOB applied the latter interpretation.

The interpretation given to a regulation or policy statement by an agency which promulgated it and is responsible for its

administration is entitled to deference, so long as that interpretation is not irrational or unreasonable (*Matter of Gaines v New York State Div. of Hous. & Community Renewal,* 90 NY2d 545, 548-549). This is especially true in a municipal agency's interpretation of its zoning ordinance (*Cupid's Video Boutique v Roth,* 203 AD2d 70, *appeal dismissed* 83 NY2d 952), a function within DOB's area of responsibility (*Appelbaum v Deutsch,* 66 NY2d 975, 977).

DOB's interpretation was not irrational or unreasonable. Where the Trial Term erred was in substituting its own judgment (*see, City of New York v Les Hommes, supra,* at 273) for that of the agency. Instead of hewing to the standard of determining whether DOB's interpretation had a rational basis, or whether its actions were arbitrary and capricious (*Flacke v Onondaga Landfill Sys.,* 69 NY2d 355, 363), the nisi prius court sought an "obvious" dictionary definition and applied its own "common sense" to test whether DOB had correctly interpreted the word "exists." We do not believe that word was even used as a term of art in OPPN No. 6/96. In any event, Trial Term's approach amounted to a substitution of its own judgment for that of the agency.

Inasmuch as defendants' violation of the Zoning Resolution constituted a public nuisance (Administrative Code of City of NY § 7-703), plaintiffs were entitled to seek preliminary injunctive relief (§ 7-707). Such relief is available where the plaintiff is able to demonstrate a likelihood of ultimate success on the merits, irreparable injury if the provisional remedy is not granted, and a balancing of the equities in the plaintiff's favor (*Grant Co. v Srogi,* 52 NY2d 496). Here, plaintiffs have demonstrated the likelihood of prevailing, the irreparable injury is based upon the harm to the general public if the nuisance is not immediately abated (*see, City of New York v Scandals,* 178 Misc 2d 267, 274), and the equities are clearly in plaintiffs' favor by reason of defendants' unclean hands in initially obtaining the permit from DOB under false pretenses. To deny such relief under these circumstances would be to encourage lawlessness in pursuit of commercial advantage. Concur—Rosenberger, J. P., Williams, Tom, Wallach and Rubin, JJ.