No. 01-713

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 73

MESA COMMUNICATIONS GROUP, LLC,

      Petitioner and Respondent,

   v.

YELLOWSTONE COUNTY, MONTANA,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable Gregory R. Todd, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Mark A. English, Deputy County Attorney, Billings, Montana

      For Respondent:

          Jeanne Matthews Bender, Charles E. Hansberry; Holland & Hart,
          Billings, Montana

                      Submitted on Briefs:   February 21, 2002

                              Decided:   April 11, 2002

Filed:

_____
                        Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Yellowstone County (County) appeals from a Memorandum and Order entered by the Thirteenth Judicial District Court, Yellowstone County, concluding that the Yellowstone County Commissioners (Commissioners) erred in interpreting zoning regulations and in denying an application by Mesa Communications Group (Mesa) to build a telecommunications tower in Yellowstone County. The County also appeals from the court's issuance of a writ of mandate ordering approval of Mesa's application. We affirm.

¶2 The issue on appeal is whether the District Court erred in concluding that the term "existing," as used in the County's Zoning Regulations, applies only to telecommunications towers actually in existence and not to towers that were approved but not yet built.

BACKGROUND

¶3 Resolution No. 98-69, Section 27-320 of the County Zoning Regulations (Regulations) sets standards for telecommunications towers. Section 27-320G, subsection 11, of the Regulations is entitled "Tower Separation" and requires that "[a]ll commercial telecommunications towers over fifty (50) feet in height . . . shall be located at least one (1) mile from any other commercial telecommunications tower." The Regulations further provide that "[n]o new tower shall be permitted unless the applicant demonstrates to the reasonable satisfaction of the Planning Department that no existing tower or structure can accommodate the

2

applicant's proposed antenna."  Regulations, Section 27-320K, subsection 5.

¶4   In November of 2000, Mesa applied to the City of Billings/Yellowstone County Planning Department for permission to construct a wireless telecommunications tower 250 feet in height within the County's zoning jurisdiction.  Mesa proposed to lease Summit Wireless space on the tower for an antenna. The City of Billings/County Planning Department reviewed the application and recommended it be denied based on the 1-mile separation requirement, because a 100-foot tower had been built and a 300-foot tower had been approved, but not yet built, within a mile of the tower proposed by Mesa.

¶5   The Regulations allow the Commissioners to waive the 1-mile separation requirement on "special review" if an applicant establishes that an existing tower could not accommodate the applicant's proposed antenna.  In fact, the Commissioners had waived the requirement in approving the application for the 300-foot tower, which was submitted by TriStar.  Mesa applied for special review.

¶6   The County Zoning Commission held a public hearing on Mesa's request for special review.  At the hearing, Mesa presented evidence that it was not technically feasible to place Summit's antenna on the existing 100-foot tower.  Mesa did not present evidence that it would be infeasible to place the antenna on the previously-approved 300-foot tower.  A TriStar representative testified that TriStar could and would accommodate Summit's antenna on its tower, construction of which had not yet begun.  Following

3

the December 11, 2000 public hearing, the Zoning Commission recommended to the Commissioners that Mesa's application for special review be denied.

¶7 A week later, the Commissioners held a hearing on Mesa's application and took it under advisement. On January 9, 2001, the Commissioners issued a written denial of Mesa's application for special review, reasoning that Mesa's proposed tower was within a 1-mile radius of the proposed and approved TriStar tower. They concluded it would "not make sense" to interpret the Regulations to fail to consider the approved tower.

¶8 Mesa then filed a "Petition for Declaratory Judgment, Judicial Review, and Appropriate Writ," in the District Court, seeking a declaration of its legal rights and relief from application of the 1-mile Regulation. The parties ultimately agreed the matter could be resolved via a summary ruling on Mesa's request for declaratory judgment and, accordingly, each party moved for summary judgment on the same undisputed facts.

¶9 The District Court granted Mesa's motion for summary judgment and denied the County's. In doing so, the court adopted Mesa's argument that the 1-mile separation requirement applied only to towers that have been constructed and not to unconstructed towers approved for construction.

## DISCUSSION

¶10 Did the District Court err in concluding that the term "existing," as used in the Regulations, applies only to telecommunications towers actually in existence and not to towers that were approved but not yet built?

4

¶11 Our standard of review in summary judgment appeals is *de novo*. We use the same standards used by the trial court: first, whether issues of material fact exist and, if not, whether the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; *Winslow v. Montana Rail Link, Inc.*, 2000 MT 292, ¶ 38, 302 Mont. 289, ¶ 38, 16 P.3d 992, ¶ 38 (citation omitted). In cases such as this one, where the parties agree on the facts, we review only the district court's legal conclusion that a party is entitled to judgment as a matter of law. *See Watters v. Guaranty Nat. Ins. Co.*, 2000 MT 150, ¶ 21, 300 Mont. 91, ¶ 21, 3 P.3d 626, ¶ 21.

¶12 The County argues the meaning of "existing tower" is imprecise and open to at least two reasonable interpretations: one that includes approved but not yet built towers, and one that excludes approved but not yet built towers. In light of such an ambiguity, the County urges that interpreting the Regulation to include approved but not yet built towers furthers the Regulations' purpose of limiting the number of towers and, as a result, limits the towers' adverse aesthetic effects.

¶13 Mesa contends, on the other hand, that the term "existing tower" is not ambiguous. The District Court agreed, and so do we.

¶14 The same rules of construction apply to official enactments by county commissioners as apply to the construction of a statute. *State, ex rel. Thompson v. Gallatin County* (1947), 120 Mont. 263, 271, 184 P.2d 998, 1002. Under those rules, we look first to the plain meaning of the words used in determining the intent of the

5

enacting entity; only where that intent cannot be determined from the plain meaning of the words used may we go further and apply other means of interpretation. *See Murphy for L.C. v. State* (1987), 229 Mont. 342, 344, 748 P.2d 907, 908 (citations omitted). The role of the judge is to "ascertain and declare what is in terms or in substance contained [in the Regulations], not to insert what has been omitted or to omit what has been inserted." *See* § 1-2-101, MCA.

¶15 The term "existing tower" as used in the Regulations is neither ambiguous nor imprecise. "Exist" means to have real being, whether material or spiritual, or to have being in space and time. WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 435 (1991). A telecommunications tower clearly has no spiritual being. Such a tower does, however, have real material being. In addition, a tower has being in space and time. Neither can be said of an "approved" tower on which construction has not begun. Consequently, we conclude that an "existing tower" does not include one which has not yet been built or even begun.

¶16 Moreover, as the District Court noted, other sections of the Regulations refer separately to "proposed" and "existing" towers. *See* Regulations, Sections 27-320G, subsection 8, and 27-320K, subsection 5. The Regulations clearly distinguish between towers which have been constructed and towers merely proposed for construction. The Commissioners' denial of Mesa's application did not specifically address the Regulations' use of the word "existing;" nor did it recognize the alternative use of the word "proposed." It focused on the purposes of the Regulations.

6

¶17 Because the question of law at issue here can be resolved based on the plain meaning of the words used in the Regulations, we do not address at length the County's argument regarding the purpose of the Regulations. We merely point out that the Regulations set forth a number of legitimate and competing public purposes, including "enhanc[ing] the ability of the providers of telecommunications services to provide such services to the community as quickly, effectively, and efficiently as possible." *See* Regulations, Section 27-320A.

¶18 For similar reasons, we do not address at length the County's reliance on *City of New York v. Love Shack* (N.Y.A.D. 1 Dept. 2001), 729 N.Y.S.2d 37, in support of its contention that the term "existing" in a regulation includes a use that has been approved. *Love Shack* is distinguishable. First, there is no indication in *Love Shack* that the policy at issue there made a distinction between "existing" and "proposed" adult establishments. Second, the New York court's decision may have been influenced by the fact that the applicant concealed its intention to open an adult establishment in its application for a building permit. *See Love Shack*, 729 N.Y.S.2d at 38.

¶19 We hold the District Court correctly concluded that the term "existing" as used in County Regulations only applies to telecommunications towers actually in existence and not to towers that were approved but not yet built. Therefore, we affirm the District Court's summary declaratory judgment in Mesa's favor and its writ of mandate requiring the Commissioners to approve Mesa's application to build a telecommunications tower.

/S/ KARLA M. GRAY

We concur:


/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM REGNIER

Justice W. William Leaphart dissenting.

¶20  I dissent.  The zoning regulations in question were designed to limit the number of communications towers in the county.  In light of that purpose, the Board of County Commissioners interpreted the term "existing tower" as encompassing approved but not yet built towers.  I would defer to that reasonable interpretation.  The interpretation adopted by the District Court and approved by this Court results in an increase in the number of towers in the county and thereby defeats the purpose of the regulation.

/S/ W. WILLIAM LEAPHART

9