DA 06-0567

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 237

JOE SEIPEL, an Individual d/b/a MARKET RESEARCH GROUP,

      Plaintiff and Appellant,

  v.

OLYMPIC COAST INVESTMENTS, a Washington corporation;
QUENTIN RHOADES, individually, and the Law Firm of
SULLIVAN, TABARACCI & RHOADES, P.C.,
and JOHN DOES, 1 THROUGH 20,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade, Cause No. ADV 05-320
                Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Gary M. Zadick; Ugrin, Alexander, Zadick & Higgins, P.C.,
            Great Falls, Montana

            Patrick F. Flaherty, Attorney at Law, Great Falls, Montana

      For Appellees:

            Gary L. Graham; Garlington, Lohn & Robinson, PLLP,
            Missoula, Montana

Submitted on Briefs:  April 15, 2008

Decided:  July 2, 2008

Filed:

_____
                    Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1      Joe Seipel appeals from an order and judgment of the Eighth Judicial District Court, Cascade County, granting the defendants' motion for summary judgment and dismissing his action for malicious prosecution and abuse of process.  We reverse and remand.

¶2      We restate the issues as whether the District Court erred in granting summary judgment on Seipel's claim for malicious prosecution and whether the court erred in granting summary judgment on Seipel's claim for abuse of process.

BACKGROUND

¶3      This action arises out of a federal court action Olympic Coast Investments (Olympic), a Washington corporation, filed against Joe Seipel in 2003.  Quentin Rhoades and the Law Firm of Sullivan, Tabaracci & Rhoades, P.C., represented Olympic in that matter.

¶4      Olympic's federal court action was premised on a professional property appraisal Seipel performed for Olympic in 1998 and revised in 2000.  Seipel valued the property—an RV park outside of Anaconda, Montana—at $1.1 million.  Olympic later disbursed $680,000 in financing—secured by a trust indenture—to David Barr for purchase of the property.  Barr defaulted on his obligation, which totaled $780,000 at the time, and the property sold at auction for approximately $425,000 in December of 2002.

¶5      Olympic subsequently filed a complaint against Seipel in federal district court in Montana, alleging that Seipel had overvalued the property and seeking to recover

2

damages from him on various theories. Seipel moved for summary judgment based, in part, on Olympic's lack of capacity to maintain the suit. He claimed Olympic had not obtained a statutorily-required certificate of authority to do business in Montana as an express or "Massachusetts" trust, which Olympic then claimed to be. In February of 2005, the federal district court heard arguments on Seipel's motion for summary judgment. The court noted that, although it had given Olympic the opportunity to do so, Olympic had not amended its complaint to allege anything other than that it was proceeding as a trustee of an express business trust, suing in its own name to pursue the action on behalf of the trust and its beneficiaries. The court granted Seipel's motion and dismissed the case without prejudice, providing a comprehensive oral explanation for its ruling.

¶6      In March of 2005, Seipel filed this action for malicious prosecution and abuse of process in the District Court against Olympic, Rhoades and Rhoades' law firm (collectively, "the defendants"). He alleged the federal court action was without merit and filed for improper motives. Seipel also alleged the defendants were aware of the legal and factual infirmities of Olympic's claims in the federal court action.

¶7      The defendants moved for summary judgment. They contended the federal court action had not terminated favorably for Seipel, as required to establish a malicious prosecution claim. They also contended Seipel had failed to present evidence that Olympic had an ulterior motive in filing that action, as required to establish an abuse of process claim. Seipel opposed the motion for summary judgment.

¶8      The District Court agreed with Olympic and granted summary judgment for the

3

defendants on both of Seipel's claims. Seipel appeals.

STANDARD OF REVIEW

¶9 Summary judgment is an extreme remedy which should not be substituted for trial if a material factual controversy exists. *Molina v. Panco Const., Inc.*, 2002 MT 136, ¶ 14, 310 Mont. 185, ¶ 14, 49 P.3d 570, ¶ 14 (citations omitted). Pursuant to M. R. Civ. P. 56(c), summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We review a summary judgment *de novo. Cole v. Valley Ice Garden, L.L.C.*, 2005 MT 115, ¶ 4, 327 Mont. 99, ¶ 4, 113 P.3d 275, ¶ 4.

ISSUE 1

¶10 **Did the District Court err in granting summary judgment on Seipel's claim for malicious prosecution?**

¶11 A plaintiff's burden at trial in a civil action for malicious prosecution is to introduce evidence which allows reasonable jurors to find the following elements:

> (1) a judicial proceeding was commenced and prosecuted against the plaintiff;
> (2) the defendant was responsible for instigating, prosecuting or continuing the proceeding;
> (3) the defendant acted without probable cause;
> (4) the defendant was actuated by malice;
> (5) the judicial proceeding terminated favorably for plaintiff; and
> (6) the plaintiff sustained damages.

*Plouffe v. Montana Dept. of Public Health and Human Services*, 2002 MT 64, ¶ 16, 309 Mont. 184, ¶ 16, 45 P.3d 10, ¶ 16 (citations omitted). Because the elements are written in the conjunctive, each must be satisfied. In the summary judgment context, then, a

4

plaintiff must raise a genuine issue of material fact on each element to withstand summary judgment. *See generally Plouffe*, ¶ 17; *O'Fallon v. Farmers Ins. Exchange*, 260 Mont. 233, 239-41, 859 P.2d 1008, 1012-13 (1993). In the present case, the District Court concluded Seipel could raise no issue of material fact on element (5) of his malicious prosecution claim—that Olympic's federal proceeding terminated in his favor—because the federal court's decision to dismiss Olympic's action without prejudice addressed only Olympic's capacity to sue and not the merits of the case. Seipel asserts error.

¶12     Seipel argues the prior proceeding terminated favorably for him because, while the federal court left the door open for individual investors in Olympic to sue, it closed the door on Olympic's ability to sue him again. He points out that, in dismissing Olympic's suit, the federal judge explained to Rhoades—Olympic's counsel—that Olympic's failure to comply with Montana law concerning its status resulted in lack of capacity to maintain the suit:

> The plaintiff chose the manner of positioning itself as to its status and capacity to maintain suit. There's no question, in the view of the court, that the plaintiff was directly apprised by the court at the time of the November 12 hearing that it would have to identify how it intended to proceed, and after the plaintiff itself had suggested, at least, that it might consider adding individual investors in this program as parties. Presumably, the plaintiff took whatever course of action it felt was appropriate and did so with a clear understanding of the potential for that course of action.
>
> Having said all of that, Mr. Rhoades, in the view of this court, the court would be entirely justified in dismissing this case with prejudice. But I'm going to do something short of that. I'm going to dismiss this lawsuit without prejudice. And I want you to clearly understand, and I want you to pass on to your client group, whomever it may be, and to the people to whom you are responsible, that I do so solely to afford the investors in this

5

> [Olympic] program or scheme an opportunity to preserve whatever claims or rights they may still have to protect their interests in this matter.
>
> I emphasize that I have made absolutely no determination about the merits of this case. I have reached the conclusion I have reached solely on the basis of the course of action that the plaintiff, with ample opportunity to do otherwise, chose to take.
>
> The motion to dismiss this case without prejudice—or the motion to dismiss is granted; the dismissal will be without prejudice.

Based on this language, Seipel contends the dismissal of the federal court case was a determination in his favor for purposes of a malicious prosecution action. He relies on *Plouffe* for the proposition that a "favorable termination" need not necessarily come after a trial on the merits.

¶13 Olympic, on the other hand, contends the federal court's dismissal without prejudice was not a determination in Seipel's favor for purposes of Seipel's malicious prosecution claim, quoting the federal court's statement that it had "made absolutely no determination about the merits." It relies on *Sacco v. High Country Independent Press, Inc.*, 271 Mont. 209, 244, 896 P.2d 411, 432 (1995), in which we quoted approvingly from a California case requiring that the termination of the prior proceeding underlying a malicious prosecution claim must "reflect on the merits" of the underlying action.

¶14 *Plouffe* was an action for malicious prosecution following voluntary dismissal of an underlying action without prejudice. Among other things, the trial judge concluded as a matter of law that the "favorable termination" element had not been met. *Plouffe*, ¶ 17. On appeal, we stated the voluntary dismissal of the underlying action could lead to a reasonable inference that the plaintiff in that case had achieved its goals outside the

6

lawsuit; alternatively, it also could lead to a reasonable inference that the plaintiff simply abandoned the action as meritless. As a result, we concluded the question of whether the underlying action had terminated favorably for the plaintiff in the malicious prosecution action was an issue for a jury to resolve on remand. *Plouffe*, ¶ 37.

¶15 In *Sacco*, a criminal complaint against plaintiff Sacco had been amended and then dismissed as barred by the statute of limitations. We held that this reflected on the merits of the criminal complaint because of the "natural assumption that one does not simply abandon a meritorious action once instituted." As a result, we concluded the termination of the previous action had been in Sacco's favor and the district court had erred in determining that Sacco could not prove the fifth element of malicious prosecution. *Sacco*, 271 Mont. at 245, 896 P.2d at 433 (citation omitted).

¶16 *Plouffe* and *Sacco* are neither inconsistent nor mutually exclusive, as Olympic seems to suggest. We did not say, in *Sacco*, that the previous action must have been resolved on its merits in order to support the fifth element of a malicious prosecution claim. Indeed, dismissal without prejudice did not preclude a claim of malicious prosecution in *Sacco*. Moreover, in *Plouffe*, ¶ 34, we cited *Sacco* regarding favorable termination of the underlying action.

¶17 Here, the federal court judge stated he had "made absolutely no determination about the merits of this case" and dismissed Olympic's action without prejudice to allow Olympic's investors to preserve "whatever claims or rights they may still have." Those statements would permit a reasonable inference that the action did not terminate favorably for Seipel. On the other hand, the court also stated dismissing the case with

7

prejudice would have been "entirely justified."  That statement would support a reasonable inference that the action terminated favorably for Seipel.

¶18　We conclude Seipel, like the successful appellant in *Plouffe*, raised a genuine issue of material fact as to whether the termination of the federal court proceeding reflected on the merits of that action and was favorable to him.  As a result, we hold the District Court erred as a matter of law in granting the defendants' motion for summary judgment on Seipel's claim for malicious prosecution.

ISSUE 2

¶19　**Did the District Court err in granting summary judgment on Seipel's claim for abuse of process?**

¶20　The elements of an abuse of process claim are an ulterior purpose and a willful act in the use of process not proper in the regular conduct of the proceeding.  *Seltzer v. Morton*, 2007 MT 62, ¶ 57, 336 Mont. 225, ¶ 57, 154 P.3d 561, ¶ 57 (citation omitted).  As with a claim of malicious prosecution, a plaintiff resisting a motion for summary judgment must raise a genuine issue of material fact on each element of abuse of process, because the elements are written in the conjunctive.

¶21　The District Court granted Olympic's motion for summary judgment and dismissed Seipel's abuse of process claim on the basis that Seipel had not raised a genuine issue of material fact on either element of the tort.  Seipel contends, however, that Olympic sued him in federal court with the ulterior motive of extracting money from him without a valid claim.  He advances the affidavit of Scott Fisk—his attorney in the federal court action—to raise genuine issues of material fact on each of the elements of

8

his abuse of process claim.

¶22 In his 25-page affidavit, Fisk stated the allegation in Olympic's original federal court complaint that, in its capacity as a Washington corporation, it had suffered actual money damages in excess of the requisite jurisdictional sum of $75,000—a position Olympic had maintained for more than one year of litigation—was not true, and that Olympic acknowledged knowing this was not true only after being forced to do so through Seipel's discovery. Fisk stated that, in fact, discovery in the proceeding as originally filed revealed that Olympic actually made in excess of $100,000 on the transactions, by collecting loan origination and other miscellaneous fees.

¶23 Fisk further stated that Olympic then abandoned its own claims for damages and declared it was a trustee for a foreign "Massachusetts" or "business" trust seeking remedies on behalf of the trust and its beneficiaries. Fisk's affidavit related that Olympic's attorney, Rhoades, had stated in federal district court that Olympic was a "trustee" of an "express business trust," but that Olympic had subsequently admitted there was no business trust and Olympic was not a business trustee. According to Fisk, Olympic has conceded it had not registered as a business trust in either Washington or Montana. Finally, Fisk asserted that, in arranging financing for the property at issue, Olympic had conducted high-risk mortgage paper securities transactions on behalf of investors without complying with Washington state laws concerning sales of such securities to Washington state residents. Fisk supported the allegations in his affidavit with references to pleadings, discovery and transcripts from the earlier federal action.

¶24 The defendants claim that, in the context of the tort of abuse of process, there must

9

be evidence that the defendant used process to coerce the plaintiff to do some "collateral" thing which the plaintiff could not be compelled to do legally and regularly. They advance *Brault v. Smith*, 209 Mont. 21, 28-30, 679 P.2d 236, 240 (1984), where we affirmed a district court decision that no abuse of process claim could be pursued based on the filing of a valid legal claim without perversion of process beyond its intended purpose.

¶25 As we recently clarified, where the record establishes that an abuse-of-process plaintiff based his claim on the defendant's purpose in bringing the prior suit, as well as the conduct of utilizing the suit as an instrument of coercion, the defendant is not entitled to summary judgment. *Seltzer,* ¶¶ 57-60. Here, Fisk's affidavit supports Seipel's allegations that Olympic had no valid legal claim against him and knew it, but filed an action against him in federal court nonetheless. This record is sufficient to remove Seipel's abuse of process action from the *Brault* "valid legal claim" framework.

¶26 The defendants also quote our decision in *First Bank (N.A.)-Billings v. Clark*, 236 Mont. 195, 204, 771 P.2d 84, 90 (1989), that "[r]esort to the legal process for resolution of a controversy is wrongful only upon proof that prosecution of the action was malicious." They contend the sole remedy for the filing of a baseless lawsuit is a malicious prosecution claim. That contention is simply incorrect. *First Bank* included a malicious prosecution claim, but did not involve an abuse of process claim. Use of the court system to file a baseless legal claim may constitute an abuse of process. *Leasing, Inc. v. Discovery Ski Corp.*, 235 Mont. 133, 136, 765 P.2d 176, 178 (1988) (citation omitted).

¶27 Here, Fisk's affidavit would permit a reasonable inference that, in filing the federal lawsuit, Olympic acted with an ulterior purpose of extracting money from Seipel that he did not owe, so as to satisfy the first element of abuse of process. Fisk's affidavit would also permit a reasonable inference that Olympic willfully filed the federal suit without a valid claim, so as to satisfy the second element of abuse of process.

¶28 We conclude Seipel has raised genuine issues of material fact as to whether the defendants had an ulterior purpose in filing the federal court action against him and whether, by filing that suit, they engaged in a willful act not proper in the conduct of the proceeding. As a result, we hold that the District Court erred in granting summary judgment for the defendants on the abuse of process claim.

¶29 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice John Warner concurs and dissents.

¶30 I concur with the Court that the District Court erred in granting the defendants' motion for summary judgment on Seipel's claim for malicious prosecution. However, I

11

agree with the District Court that the defendants are entitled to summary judgment on Seipel's claim for abuse of process.

¶31     An abuse of process claim requires an attempt by the plaintiff to use process to coerce the defendant to do some collateral thing which he could not be legally and regularly compelled to do.  The Court today deletes an essential element of an abuse of process claim which distinguished it from an action for malicious prosecution.

> An "abuse" or "malicious abuse" of process is its employment to obtain a result which the process was not intended by law to effect.
>
> . . . .
>
> The fundamental distinction between malicious use and malicious abuse of process is that the first is an employment of process for its ostensible purpose, although without probable cause, whereas the second is employment of process for a purpose not contemplated by law.

72 C.J.S. *Process* § 152 (2005).

¶32     In accord with the common law, in Montana, until the Court's decision today, the purpose to obtain some collateral result has been an essential element of the tort of abuse of process.  *Brault*, 209 Mont. at 29, 679 P.2d at 240; *Seltzer*, ¶ 57.

¶33     In this case, the Court erroneously concludes that Seipel can go forward with his abuse of process claim simply because he presented evidence that Olympic had no valid claim against him and knew it, but nonetheless filed the action against him in federal court.  ¶ 25.  The Court states, citing *Leasing, Inc.*, that use of the court system to file a baseless claim may constitute an abuse of process.  ¶ 26.  The Court misreads *Leasing, Inc*.  There, no tort was alleged and no damages were claimed.  In *Leasing, Inc.*, the Lewis and Clark County District Court dismissed a lawsuit filed in Justice Court in

12

Granite County because a contract, which was the basis of that suit, provided that it was to be performed in Lewis and Clark County and also provided that the venue of any action on the contract was Lewis and Clark County. This Court affirmed the District Court's dismissal of the Justice Court suit, agreeing that filing the action in Granite County was an abuse of process. *Leasing, Inc.*, 235 Mont. at 136, 765 P.2d at 178. In *Leasing, Inc.*, the suit in the Granite County Justice Court was filed to require the defendant, Leasing, Inc., to litigate in Granite County, rather than proceed with a proper suit on the same contract it had previously filed in the District Court for Lewis and Clark County. The purpose of the Granite County suit was to make Leasing, Inc. do a collateral thing which the Justice Court could not legally and regularly compel it to do. The prayed for result was beyond the authority of the Justice Court. The suit in the Granite County Justice Court was thus described as an abuse of process. The *Leasing, Inc.* Court did directly cite to that portion of *Brault* which states that to constitute an abuse of process "there must be an attempt by the plaintiff to use process to coerce the defendant to do some collateral thing which he could not be legally and regularly compelled to do." *Leasing, Inc.*, 235 Mont. at 136, 765 P.2d at 178 (citing *Brault*, 209 Mont. at 28-29, 679 P.2d at 240).

¶34 The requirement of a collateral purpose to sustain an abuse of process claim was reiterated in the Court's latest case on the subject, *Seltzer*. In *Seltzer*, the plaintiff did not base his abuse of process claim on the isolated fact that the defendants filed a baseless lawsuit against him. He based his claim on the defendants' untoward purpose in bringing the suit and their conduct of utilizing the suit as an instrument of coercion, rather than a

13

legitimate means to resolve a genuine dispute. Seltzer's complaint explicitly specified an alleged ulterior motive, defendants' use of the lawsuit complained of to attempt to force him to untruthfully recant an opinion. Seltzer claimed that the plaintiffs in the alleged abusive suit had no intention of taking the underlying case to trial and that they simply utilized the lawsuit as a means to force him to recant his opinion. *Seltzer*, ¶ 58. The Court, citing to *Brault*, 209 Mont. at 29, 679 P.2d at 240, again stated that an abuse of process entails an attempt by the plaintiff to use process to coerce the defendant to do some collateral thing which he could not be legally and regularly compelled to do. *Seltzer*, ¶ 57.

¶35 Thus, a proper application of Montana law would require that in order to recover damages for abuse of process, a plaintiff must prove that (1) the defendant commenced a suit against him for an ulterior purpose and (2) the suit was a willful act in the use of the process not proper in the regular conduct of the proceeding. To establish the second element, there must be an attempt by the plaintiff to use process to coerce the defendant to do some collateral thing which he could not be legally and regularly compelled to do. *Brault*, 209 Mont. at 29, 679 P.2d at 240.

¶36 In this case, the alleged abusive suit filed by the defendants in federal court was for the purpose of recovering damages based on an over-valuation of property. The suit was dismissed because Olympic did not obtain a certificate granting it authority to do business in Montana. It was not dismissed because it prayed for relief that the federal district court could not legally and regularly compel.

14

¶37	The suit in federal court is not an abuse of process, even though it may constitute a malicious prosecution if Seipel can prove the necessary six elements of such a claim. Seipel did not, and could not under these facts, present evidence that the federal lawsuit attempted to get him to do some collateral thing which he could not be legally and regularly compelled to do. The purpose of the federal action was to recover damages for an alleged tort and breach of contract. The lawsuit itself was a legitimate means to resolve a genuine dispute. Collection of damages resulting from a negligently prepared appraisal is a proper purpose and use of process. The mere fact that the suit had some collateral effect on the parties does not constitute abuse of process. *Brault*, 209 Mont. at 29, 679 P.2d at 240 (citing *Crease v. Pleasant Grove City*, 519 P.2d 888, 890 (Utah 1974)).

¶38	There is good reason for the rule that an abuse of process requires more than the simple use of the court system to file a baseless claim. The tort of abuse of process requires that the underlying suit constitute an attempt by the plaintiff to use process to coerce the defendant to do some collateral thing which he could not be legally and regularly compelled to do. If this essential element is eliminated, almost every successful defendant can sue the unsuccessful plaintiff for abuse of process. It is, after all, predictable that a successful defendant will claim that the suit against him, her, or it was baseless. A description of the tort of abuse of process, which points out the gravity of the Court's mistake today, is articulated by the editors of American Jurisprudence 2d:

> "Abuse of process" may generally be defined as the use of a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which the process was not designed. In this regard, the

15

Restatement of Torts, 2d, states that one who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed is subject to liability to the other for harm caused by the abuse of process. It has also been stated that abuse of process is the misuse of legal process to accomplish some purpose outside the scope of the process itself, and that abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order.

In its most basic sense, an action for abuse of process is intended to prevent parties from using litigation to pursue objectives other than those claimed in the suit, such as using a court's process as a weapon to compel another party to pay a different debt or to take some action or refrain from it. Thus, the essence of a cause of action for abuse of process is a perversion of the process to accomplish some improper purpose.

Because of its potential chilling effect on the right of access to the courts, the tort of abuse of process is disfavored, and must be narrowly or strictly construed to insure the individual a fair opportunity to present his or her claim.

1 Am. Jur. 2d *Abuse of Process* § 1 (2005).

¶39 The Court's decision to eliminate an essential element of the common law action for abuse of process could have a chilling effect on the policy of keeping Montana courthouses open to all. Plaintiffs, who often have limited means, must now consider not only whether they have a reasonable expectation of recovering damages; they must assess whether they can afford to defend an abuse of process suit if they are unsuccessful.

¶40 I dissent from the Court's decision on issue two.

/S/ JOHN WARNER

Justice Jim Rice joins in the foregoing concurrence and dissent.

/S/ JIM RICE

16