OPINION OF THE COURT
David Goldstein, J.
ISSUE
This case presents an issue of apparent first impression under the adult entertainment zoning law, namely, whether a topless bar may be located within 500 feet from a residence district, where, on this record, a substantial portion of the district consists of a cemetery. Plaintiffs move, pursuant to Administrative Code of the City of New York §§ 7-707, 7-709, 7-710, 7-711, 26-120 and 26-246, and CPLR article 63, for preliminary injunctive relief.
BACKGROUND
This action was brought to abate a public nuisance conducted in the commercial establishment known as “Scandals”, located *269 on the ground floor at 32-37 Greenpoint Avenue, Queens, New York. According to the recent amendment to the New York City Zoning Resolution, which regulates adult establishments, if Scandals is an adult establishment within the terms of New York City Zoning Resolution § 12-10, it would be in violation of New York City Zoning Resolution § 42-01 (b). As a result, Scandals would constitute a nuisance under the Nuisance Abatement Law (Administrative Code § 7-701 et seq.), since any building “wherein there exists or is occurring a violation of the zoning resolution” is defined as a public nuisance (Administrative Code § 7-703 [k]).
In this action for a permanent injunction (Administrative Code § 7-706), the order to show cause granted an ex parte temporary closing order (Administrative Code § 7-709) and a temporary restraining order (Administrative Code § 7-710), pending the hearing on this motion for a preliminary injunction (Administrative Code § 7-707). Hearings were held on August 28 and 31 and September 1, 1998. The temporary closing and restraining orders expired, by their terms, at the conclusion of the hearing, in light of the City’s failure to apply to continue the temporary relief pending determination of the motion.[1] Thereafter, on September 1, 1998, plaintiffs made an oral application to reinstate and continue the temporary closing and restraining orders and, after argument, the application was denied on procedural grounds. In accordance with the agreement of the parties, briefs were to be served and submitted by both sides on September 11, 1998. The City improperly attempted to expand the record, by submission of additional evidentiary proof, which was not permitted. The property owners, defendants Novak and Castaldi, have defaulted on the motion and have neither appeared in the action nor answered the complaint.
FACTS
In 1995, the City Council enacted a zoning amendment to regulate the location of adult establishments, prohibiting their location within 500 feet from a school, church, a residence district, or another adult establishment. This was in response to the negative secondary impacts of adult establishments upon residential communities.
*270 An adult establishment is defined in New York City Zoning Resolution § 12-10: “An ‘adult establishment’ is a commercial establishment where a ‘substantial portion’ of the establishment includes an * * * adult eating or drinking establishment”. New York City Zoning Resolution § 12-10 (Adult establishment) (b) (1) defines an adult eating or drinking establishment to include
“an eating or drinking establishment which regularly features * * *
“live performances which are characterized by an emphasis on ‘specified anatomical areas’ ”.
Such anatomical areas include “less than completely and opaquely concealed: (i) human genitals, pubic region, (ii) human buttock, anus, or (iii) female breast below a point immediately above the top of the areola”. (NY City Zoning Resolution § 12-10 [Adult establishment].) New York City Zoning Resolution § 42-01 (b) provides in part that “ ‘adult establishments’ shall be located at least 500 feet from * * * a ‘Residence District’ ”.
It is undisputed that Scandals is located in an Ml-1 manufacturing district, a district within which such an adult establishment may properly operate. However, if the subject premises was within 500 feet from a residence district, it would violate New York City Zoning Resolution § 42-01 (b) and would amount to a public nuisance under Administrative Code § 7-703 (k). Located directly across the street from Scandals, on the south side of Greenpoint Avenue, is an R4 (residence) district. According to zoning map 13a (plaintiffs’ exhibit 1), which is part of the New York City Zoning Resolution, Calvary Cemetery is located within a portion of the R4 district which is directly across the street from the subject premises. In addition to Calvary Cemetery, the R4 district encompasses approximately 13 blocks, bordered by 50th Avenue to the north, Laurel Hill Boulevard to the south, 38th Street to the west, and 48th Street as the easternmost boundary. The record, however, does not disclose whether anyone actually resides within the district, a circumstance which the City argues is irrelevant to the legal issue before the court.
Scandals’ argument is twofold. First, it asserts that insufficient proof has been adduced to demonstrate that it is an adult eating and drinking establishment. Second, it contends that New York City Zoning Resolution § 42-01 (b) is unconstitutional as applied to it, since, although the premises may be located within 500 feet from a residence district, the nearest *271 portion of the district contains a cemetery, which has no residential use. Additionally, Scandals maintains that the adult entertainment zoning amendment fails to set forth a standard to determine how 500 feet is to be measured from the adult establishment to a residence district, which, according to defendant, should be from the front door of the premises to the entrance to the cemetery, a distance which, it is alleged, is in excess of 500 feet.
According to the proof adduced, clearly, Scandals is an adult eating or drinking establishment, within the terms of New York City Zoning Resolution § 12-10. On a regular basis, it features live performances, with an unmistakable emphasis upon specific anatomical areas, namely, inter alia, the female breasts, and with an additional emphasis upon specific sexual activities, to wit, fondling or erotic touching of human genitals and female breasts. On at least seven occasions, once on July 25, 1998, twice on July 26, twice on July 27, once on July 28, and once on August 10, 1998, at various times, inspectors with the Department of Buildings entered the premises, posing as patrons. They testified to having observed an age restriction sign at the point of entry. Inside, there was a circular stage, surrounded by a bar. On each occasion, the inspectors observed topless dancers on the stage, either caressing their breasts or rubbing their genitals, or gyrating against a pole located on the stage. During the performances, there were customers present and drinks were served. The dancers could be seen from almost any point within the premises.
On this record, it is palpably clear that Scandals is an adult eating or drinking establishment. Notwithstanding defendant’s objection, there is no real dispute on this record and the proof is overwhelming that it is such an establishment. Therefore, the ultimate question to be resolved is whether it is located within 500 feet from a residence district, which would mandate closure under the Nuisance Abatement Law, based upon the violation of the New York City Zoning Resolution.
As noted, zoning map 13a indicates that an R4 district is located directly across the street from Scandals, on Greenpoint Avenue. While a large portion of the R4 district encompasses Calvary Cemetery, New York City Zoning Resolution § 12-10 defines a residence district as “any district whose designation begins with the letter ‘R’.” Residence is defined as “a ‘building’ or part of a ‘building’ containing ‘dwelling units’ or ‘rooming units’, including one-family or two-family houses, multiple dwellings, boarding or rooming houses, or ‘apartment hotels’.” (NY City Zoning Resolution § 12-10.)
*272 The New York City Zoning Resolution, which was adopted in 1960 by the now-defunct Board of Estimate, inter alia, permits certain classifications of uses of land in residence districts. One such permitted use within a residence district is a cemetery, which is classified as a use group 4 use. (NY City Zoning Resolution § 22-14.) Use group 4 uses consist of certain types of community facilities, such as churches, rectories, community centers or medical offices, as well as “open ‘uses’ of land which are compatible with a ‘residential’ environment”, such as cemeteries, parks, or golf courses. (NY City Zoning Resolution § 22-14.) Clearly, individuals do not reside in most community facility uses, nor in the “open uses”. Thus, cemeteries are permitted uses in R3 through RIO districts since, in its wisdom, the Board of Estimate determined that a cemetery is an open use, compatible with a residential environment, notwithstanding that it is common knowledge that individuals do not actually reside there. Accordingly, the underlying standard set forth in the New York City Zoning Resolution for a residence district is not whether individuals reside in buildings within the district boundaries but, rather, what types of land uses are permitted within such district. It is evident from the zoning scheme that all uses of land in a residence district are not limited to residential dwelling units, and that some uses, such as community facilities and cemeteries, which do not consist of residential inhabitants, are permitted in residence districts.
Therefore, given this regulatory scheme for zoning, this court is not empowered to hold, as defendant contends, that the 500-foot rule is invalid as applied to Scandals simply because a cemetery, by its very nature, contains no living residents who would need protection from the negative secondary effects of an adult eating or drinking establishment. Plainly, the Board of Estimate had a rational basis to classify a cemetery as a permitted use group 4 use in a residence district, and this court may not usurp the legislative function and prerogative by delving into the particular uses of parcels of land that comprise this R4 district. Inasmuch as they are legislative enactments, as a general proposition, land use regulations, including zoning plans, enjoy a strong presumption of constitutionality as valid exercises of the State’s police power, necessary to foster the public health, safety and welfare. (See, Stringfellow’s of N. Y. v City of New York, 91 NY2d 382, 395-396; McMinn v Town of Oyster Bay, 66 NY2d 544, 548-549.) Even were the validity of a provision to be “fairly debatable”, the municipality’s judgment as to its necessity is dispositive. *273 (See, Matter of Town of Bedford v Village of Mount Kisco, 33 NY2d 178, 186.)
In this case, as the City conceded at conference and on argument, the result may be unfortunate in light of the City Council’s[2] purpose in enacting the adult entertainment zoning amendment, namely, to address the adverse secondary impact upon residential areas, which emanates from such adult entertainment establishments. Here, individuals do not actually reside within the cemetery, nor has the City demonstrated that anyone actually lives within the district. However, this is not the test. In its wisdom, the City Council has enacted a 500-foot rule to apply to residence districts, not to residences or residential dwellings. Were the rule applied to residences or residential dwellings, and not to districts, there might be inconsistent results. The negative secondary impact of Scandals may not be as severe in terms of its location across the street from a cemetery, in relation to other exclusively residential areas, but the cemetery is nevertheless part and parcel of this R4 district. As such, it falls within the letter, if not the spirit, of what the City Council sought to prevent, namely, the use of such premises as an adult entertainment establishment, within 500 feet from a residence district.
Scandals’ contention that any measurement under the 500-foot rule must be taken in a straight line, from its entrance to the entrance to the cemetery, a distance in excess of 500 feet, is without merit. The standard is set forth in New York City Zoning Resolution §§ 76-01 and 76-142, in that the boundary line of a zoning district is considered to be in the center of the street at the nearest point to the boundary line of the district, and the distance is to be measured in a straight line. Here, the boundary line of the R4 district would be the center of the intersection of Bradley and Greenpoint Avenues, a point clearly within 500 feet of the entrance to Scandals. In fact, Inspector Connors testified that, according to his measurements, the distance is only 70 feet. Although a Department of Buildings policy procedure sets forth the manner by which a measurement is to be taken from an adult entertainment establishment to a school or place of worship (considered “sensitive receptors”), it is silent as to any measurement in relation to a residence district. In my view, the silence results from the fact that the New York City Zoning Resolution (NY City Zon *274 ing Resolution § 76-142) sets forth and defines the boundary line of such a district. Clearly, pursuant to New York City Zoning Resolution § 76-01, the measurement would be made in a straight line, from the entrance to the adult establishment to the boundary line of the residence district, a measurement which, on this record, places Scandals within 500 feet from the R4 district.
Therefore, upon the foregoing, plaintiffs have demonstrated, by clear and convincing evidence, that Scandals is an adult eating and drinking establishment, which, pendente lite, may no longer operate as such, since it is located within 500 feet from a residence district. As a result, under the Nuisance Abatement Law, it is a public nuisance since it is a building which is in violation of the New York City Zoning Resolution. The objection advanced by defendant, albeit not expressed as such, is actually to the New York City Zoning Resolution, and the classification of the district containing a cemetery as within an R4 district. The use group classifications of a cemetery as within an R4 district, however, is not before the court on this application or in this action. Nor has the court considered, on the merits, the propriety of the zoning classification, which can only be addressed in an appropriate proceeding commenced for that purpose, against proper parties, and after exhaustion of the applicable administrative remedies.
In my view, the City has also met the standard for preliminary injunctive relief under CPLR 6301. In order to obtain a preliminary injunction, a plaintiff has the burden of demonstrating (1) a likelihood of ultimate success on the merits, (2) irreparable injury if provisional relief is withheld, and (3) a balancing of the equities in plaintiff’s favor. (See, Aetna Ins. Co. v Capasso, 75 NY2d 860; Grant Co. v Srogi, 52 NY2d 496; Chrysler Corp. v Fedders Corp., 63 AD2d 567.) Here, plaintiffs have satisfied this burden. Likelihood of success on the merits has been demonstrated, since plaintiffs have established by clear and convincing evidence that Scandals is a public nuisance under the Nuisance Abatement Law. As a result, irreparable injury has likewise been demonstrated, given the per se violation of the New York City Zoning Resolution, which, under the legislative scheme, is harmful to the general public. Plainly, the equities predominate in favor of the plaintiffs under the balancing of equities standard for injunctive relief.
Accordingly, it is ordered that the motion for a preliminary injunction is granted, and it is further ordered that the ground *275 floor of the subject premises, located at 32-37 Greenpoint Avenue, Queens, New York, shall be closed forthwith and until further order of the court.

. Scandals reopened for business on the evening of August 31, 1998, counsel representing that the dancers would perform fully clothed and that the sign on the front awning, which advertised “Topless”, would be painted over.

. The City Council acquired jurisdiction over land use matters in New York City, including the power to amend the New York City Zoning Resolution, in 1989.