**City of New York v Goldman**

2024 NY Slip Op 30492(U)

February 14, 2024

Supreme Court, New York County

Docket Number: Index No. 452058/2020

Judge: James E. d'Auguste

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **Hon. James E. d'Auguste**                    PART     55

*Justice*

-------------------------------------------------------------------X

THE CITY OF NEW YORK,

                              Plaintiff,

                    - v -

LLOYD GOLDMAN, BLDG MANAGEMENT CO. INC., BLDG
EAST 38 STREET LLC, BESNICK ZIBA, SOPHIA LAMAS,
THE LAND AND BUILDINGS THEREON KNOWN AS 597
AND 581 THIRD AVENUE, BLOCK 919, LOT 001, IN THE
COUNTY OF NEW YORK, CITY AND STATE OF NEW
YORK, and JOHN DOE AND JANE DOE NUMBERS 1
THROUGH 10, *fictitious names, true names unknown, the*
parties intended being owners, operators, managers,
lessees, employees, agents, and all other persons and
entities claiming any right, title, or interest in the premises
which is the subject of this action,

                              Defendants.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 452058/2020 |
| MOTION DATE | 08/16/2021 |
| MOTION SEQ. NO. | 001 |

**DECISION/
SETTLE ORDER**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 8, 14, 15, 16, 17, 18,
19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 42, 43, 44, 45, 46, 47,
48, 49, 50, 58, 59, 60, 61, 70, 71

were read on this motion to/for                    INJUNCTION/RESTRAINING ORDER               .

In this action to abate a public nuisance, plaintiff the City of New York (the City) moves

by order to show cause for an order, pursuant to Administrative Code of the City of New York §§

7-707 and 28-205.1, CPLR 6311, and Judiciary Law § 140-b, to preliminarily enjoin defendants

and their agents, employees, representatives, and others acting in concert with them during the

pendency of this action to: (1) immediately comply with all outstanding orders from the New York

City Department of Buildings (DOB) related to the premises located at 579 Third Avenue and 581

Third Avenue, Block 919, Lot 001 (together, the Premises), in New York County, including

retaining a New York State licensed professional engineer and a DOB-registered contractor to

evaluate the Premises, file all necessary plans to repair the Premises and begin work to permanently

**452058/2020  CITY OF NEW YORK vs. GOLDMAN, LLOYD**
Motion No.  001

Page 1 of 16

repair the structural conditions by a date certain; and (2) immediately abate all conditions at the Premises giving rise to a public nuisance and to refrain from engaging in any further acts or omissions giving rise to a public nuisance at the Premises.

## Background

Defendant BLDG East 38 Street, LLC (Owner) is the fee owner of the Premises, and defendants Sophia Lamas and Besnick Ziba are two of its officers (NY St Cts Elec Filing [NYSCEF] Doc No. 1, complaint, ¶¶ 1 and 5-7). Defendant BLDG Management Co. Inc. (BLDG Management) is the managing agent for the Premises, and defendant Lloyd Goldman is its president (*id.*, ¶¶ 8-9). Owner, Sophia Lamas, Besnick Ziba, BLDG Management, and Lloyd Grossman (collectively, defendants) are considered "owners" for purposes of liability under Administrative Code §§ 7-706, 27-2004 and 28-101.5 (*id.*, ¶¶ 10-11).

According to the verified complaint, the Premises consists of two adjacent five-story buildings with 18 rent regulated apartments over ground floor commercial space (*id.*, ¶ 14). The two old-law tenement buildings known as 579 Third Avenue and 581 Third Avenue were combined sometime before 1950 and share a party wall (*id.*, ¶¶ 1 and 16). At present, the ground floor commercial spaces in both buildings are combined, and some of the residential apartments straddle the shared party wall (*id.*, ¶ 16). The residential portion of the Premises has been largely vacant for several years, though registrations on file with the New York State Division of Housing and Community Renewal (DHCR) in 2019 list three occupied apartments (*id.*, ¶ 17). More recent filings with DOB reveal that two of those three apartments are vacant (*id.*). Defendants have continued to rent the ground floor commercial spaces (*id.*, ¶ 24).

Defendants are alleged to have "warehoused" numerous rent-regulated apartments at the Premises and have been engaged in an effort to evict the last-remaining tenant in order to demolish the Premises and construct a new building that is not subject to rent regulation (*id.*, ¶ 18). Since

452058/2020  CITY OF NEW YORK vs. GOLDMAN, LLOYD
Motion No. 001

Page 2 of 16

[* 2]

2009, defendants have filed numerous applications to demolish the Premises, none of which have resulted in the issuance of a permit (*id.*, ¶ 20). In addition, in 2010, defendants filed an application with DHCR for permission to evict rent-regulated tenants and to demolish the Premises, though they withdrew the application four years later (*id.*, ¶ 21).

In the meantime, it is alleged that defendants have neglected to maintain and repair the Premises (*id.*, ¶ 19). Since 2006, defendants have been cited 153 times for failing to remove litter in violation of Administrative Code § 16-118, which has resulted in the accrual of $10,835 in civil penalties (*id.*, ¶ 23). The Premises has also received numerous violations for alleged structural defects beginning as early 1993 (*id.*, ¶ 25). In February 1993, DOB issued a violation for "sagging and slanted steps with door frames falling apart" (*id.*). Violation no. 34505829R from 2006 noted a significant slope in the public hallways and stairways at 579 Third Avenue and directed the Owner to "[m]ake all necessary repairs forthwith," but the violation remains unresolved (*id.*, ¶¶ 26-27; NYSCEF Doc No. 3, complaint, exhibit B).

In May 2020, inspectors from DOB's Forensic Engineering Unit (FEU) responded to a complaint about an adjacent building at 583 Third Avenue, which is also owned by defendants, and conducted a brief inspection (*id.*, ¶¶ 30 and 32). Inspectors discovered an open roof stair bulkhead which left the interior of the Premises exposed to the elements (*id.*, ¶ 31). DOB directed the Owner to seal the bulkheads and provide it with access to the Premises for a full inspection (*id.*). On May 12, 2020, DOB issued Class-1 "Immediately Hazardous" violations for the Premises, a partial vacate order for 579 Third Avenue, and a full vacate order for 581 Third Avenue (the Vacate Orders) after discovering cracked, leaning brick piers on the first floor, sloped lintels at the second through fifth floors, sloped floors throughout the Premises, and a sloped/damaged and unstable party wall at risk of collapse (*id.*, ¶ 32; NYSCEF Doc No. 4, complaint, exhibit C). That same date, DOB issued additional Class-1 violations and Commissioner's Orders (the

**452058/2020 CITY OF NEW YORK vs. GOLDMAN, LLOYD**
**Motion No. 001**

**Page 3 of 16**

[* 3]

Emergency Work Orders) directing the Owner to immediately construct shoring of the floors supported by the damaged party wall and to brace/shore the party wall (NYSCEF Doc No. 5, complaint, exhibit D). After a reinspection of the Premises, DOB issued two Immediate Emergency Declarations (together, the IEDs) on June 11, 2020 directing the Owner to take immediate action to remediate the conditions by constructing shoring of the floors and roof that are supported by the damaged party wall and constructing bracing and shoring of the damaged party wall (NYSCEF Doc No. 1, ¶ 35; NYSCEF Doc No. 6, complaint, exhibit E). Then, on September 17, 2020, DOB issued two additional Class-1 violations and Commissioner's Orders for the Premises (the Permanent Repair Orders) (NYSCEF Doc No. 1, ¶ 37). The Permanent Repair Orders noted that the Owner had "temporarily shored/braced the party wall" per the IEDs from June and directed the Owner to retain a New York State licensed professional engineer and a DOB-registered contractor to evaluate the Premises in its entirety, file permits to repair the Premises by November 15, 2020, and begin work by January 15, 2021 (NYSCEF Doc No. 7, complaint, exhibit F).

After defendants failed to fully repair the conditions noted above, the City commenced this action on October 10, 2020. The verified complaint pleads four causes of action for: (1) a statutory public nuisance for violations of the New York City Construction Codes (the Construction Codes)[1]; (2) a statutory public nuisance for failing to the maintain the Premises in safe condition under Administrative Code § 28-301.1; (3) a statutory public nuisance for failure to remove garbage and other debris under Administrative Code § 16-118 (2); and a violation of Administrative Code § 27-2005 for tenant harassment based on a repeated failure to remedy hazardous and immediately hazardous violations that substantially interfere with those tenants who

---

[1] The New York City Building Code forms part of the Construction Codes (Administrative Code § 28-101.1).

452058/2020  CITY OF NEW YORK vs. GOLDMAN, LLOYD
Motion No. 001

Page 4 of 16

lawfully reside at the Premises. The City seeks declaratory and injunctive relief and civil penalties authorized under Administrative Code § 7-706 (h).

### The Parties' Contentions

The City moves for a preliminary injunction compelling defendants to abate the conditions noted in the DOB violations, above, based on the verified complaint and its exhibits.

Defendants oppose and argue that the City has failed to meet the elements necessary to secure a preliminary injunction and that the relief sought on the application relates to the ultimate relief sought in this action. Defendants maintain that DOB issued unnecessary, redundant violations because DOB was aware that they had remedied the conditions. Defendants further argue that the City preemptively filed this action because the most recent violations allowed them until November 15, 2020 to file permits to repair the Premises. Defendants offer affidavits from BLDG employees Scott Zecher (Zecher), Executive Vice President, Alan Starkman (Starkman), Vice President, and Ziv Zamir (Zamir), AIA, Chief Architect; an affidavit from Jamison D. Morse, P.E, (Morse), Principal and Director of the Structures Division at PVE Engineering (PVE); an affidavit from Charles Pisano, Jr., P.E., (Pisano), President of The Eipel Engineering Group, D.P.C. (Eipel); and correspondence with DOB.

After receiving the Emergency Work Orders, defendants retained PVE to devise a plan to address the violations (NYSCEF Doc No. 19, Starkman aff, ¶ 4; NYSCEF Doc No. 20, Zamir aff, ¶ 2; NYSCEF Doc No. 37, Zamir aff, exhibit 15). On May 13, 2020, PVE corresponded with Ian R. King, P.E. (King) of DOB on the proposed work (NYSCEF Doc No. 21, Morse aff, ¶ 9). Alan Dudley, P.E. (Dudley), a senior project manager at PVE, wrote that PVE proposed installing shoring down to the foundation that will carry down the roof and floor load that is framing into the [party] wall … [to] relieve some of the loads on the wall" (NYSCEF Doc No. 29, Morse affirmation, exhibit 7 at 1). Dudley also expressed "concern[ ] about the ground floor level where

452058/2020 CITY OF NEW YORK vs. GOLDMAN, LLOYD
Motion No. 001

Page 5 of 16

[* 5]

we see cracking in the wall" and proposed "install[ing] shoring ... to redistribute to the load due to the self-weight of the wall down to the cellar level and relieve the stress on the piers that are failing" (id.). King responded the next day, writing that the proposal "is certainly along the lines of what I expected to see as part of the scope of the emergency work" (NYCSEF Doc No. 30, Morse affirmation, exhibit 8 at 1). King also asked PVE to reconsider the easternmost part of the shoring that ran beyond the 55-foot-long party wall, which would have affected the occupied part of the Premises with the street address of 203 East 38th Street (id.). Defendants retained Armteck Construction as the general contractor to perform the work (NYSCEF Doc No. 19, ¶ 10). By letter dated June 16, 2020, defendants informed DOB's Manhattan Borough Commissioner that it had begun work to address the structural issues at the Premises (NYSCEF Doc No. 33, Starkman aff, exhibit 11). PVE also furnished DOB with daily field reports (NYSCEF Doc No. 21, ¶ 18; NYSCEF Doc No. 39, Morse aff, exhibit 17).

Defendants maintain that DOB issued the Permanent Repair Orders unnecessarily when the remedial work was ongoing (NYSCEF Doc No. 19, ¶ 13). PVE informed DOB by letter dated October 9, 2020 that it had designed a shoring structure that was meant to remain in place for a minimum of 10 years and offered to monitor the Premises quarterly for 60 months to confirm that the Premises was secure and was not a threat to public safety (NYSCEF Doc No. 21, ¶ 22). In addition, PVE stated that the shoring "is intended to be permanent until the next use for the buildings is determined," and after 60 months of monitoring, "BLDG, in coordination with DOB, will determine if the building is ready to be demolished, as has always been the intent, or if it requires some repairs to ensure that the building can continue to stand in a safe manner" (NYSCEF Doc No. 35, Morse aff, exhibit 13 at 2). Starkman avers that he and Morse challenged the issuance of the Permanent Repair Orders because PVE's design was "robust," and no further action other than monitoring was necessary (NYSCEF Doc No. 19, ¶ 15). DOB, however, did not rescind the

452058/2020   CITY OF NEW YORK vs. GOLDMAN, LLOYD
Motion No. 001

Page 6 of 16

[* 6]

Permanent Repair Orders (*id.*). In addition, defendants retained Eipel to conduct a peer review and an independent inspection (NYSCEF Doc No. 22, Pisano aff, ¶ 9). Pisano informed DOB by letter on October 15, 2020 that it was his professional opinion "the installed shoring combined with the proposed periodic monitoring program is sufficient to maintain the buildings in a state that will protect the public for at least five years" (NYSCEF Doc No. 36, Pisano aff, exhibit 14).

Furthermore, defendants deny any claim of tenant harassment. Zecher avers that the entire Premises is vacant, and that the tenant referred to the complaint resides in an adjoining property located at 203 East 38th Street (NYSCEF Doc No. 18, Zecher aff, ¶ 11). Zecher further avers that the alleged conditions do not affect the adjoining property, and that the sole tenant is not in danger because DOB did not issue a full or partial vacate order (*id.*).

In reply, the City rejects the contentions that DOB's orders are duplicative and that the sole tenant at the Premises and the public at large are not in danger. On these points, the City tenders an affidavit from King. King explains that FEU is a special investigative unit composed of licensed professional engineers who respond to building collapses and other incidents where the stability or structure of a building is compromised (NYSCEF Doc No. 43, King aff, ¶ 1). Part of his duties include investigating the structural integrity of buildings and enforcing compliance with the Building Code (*id.*).

King avers that DOB visited the Premises on May 7, 2020 while performing an on-site structural stability assessment of 583 Third Avenue, which is on the same tax lot as the Premises (*id.*, ¶ 25). Inspections on May 12, May 15, and June 11, 2020 revealed: (1) distress along 40 feet of the 55-foot-long shared party wall; (2) cracked and displaced bricks in the brick piers supporting openings, piers that were "racked" or moved out of plumb by the building's load, and sloped steel lintels at the ground floor commercial unit; and (3) cracked finishes and walls and sloped lintels, arches and floors in the upper floors of the Premises (*id.*, ¶ 26). At 581 Third Avenue, the first-

452058/2020  CITY OF NEW YORK vs. GOLDMAN, LLOYD
Motion No. 001

Page 7 of 16

[* 7]

floor framing was saturated and rotted, and the framing at the rear was sagging and collapsing due to rot (*id.*, ¶ 26). King determined that the party wall was unstable and at risk of collapse, though the 20-foot-long north wall of 579 Third Avenue was not damaged (*id.*, ¶ 27). King issued Class-1 "immediately hazardous" violations for Administrative Code § 28-301.1 violations (*id.*, ¶ 28). Submitted with King's affidavit are numerous photographs depicting the conditions at the Premises (NYSCEF Doc No. 47, King aff, exhibit D).

King explains that DOB did not issue duplicative or redundant orders. The Emergency Work Orders allowed defendants to bypass normal permitting requirements under Administrative Code § 28-105.4.1 and begin remedial work immediately (NYSCEF Doc No. 43, ¶¶ 29-30 and 38). Defendants did not begin work immediately, and King recalled that Starkman had asked DOB to extend the Vacate Orders to 203 East 38th Street so defendants could seek to demolish the entire Premises (*id.*, ¶ 35). King avers that defendants had yet to begin the emergency work when he reinspected the Premises on June 11, 2020, and he issued the IEDs as a result (*id.*, ¶ 36). Once a hazardous condition has been temporarily remediated, DOB issues an order directing permanent repairs, which King represented happened in this case (*id.*, ¶ 38). The Permanent Repair Orders specified additional remedies for defendants to undertake once they completed the emergency work ordered in the Emergency Work Orders, and included target dates for oversight purposes (*id.*, ¶¶ 37 and 41). These additional remedies included an order directing defendants to retain personnel to evaluate the entire Premises (*id.*, ¶ 37). King represents that in a subsequent telephone conversation, Starkman informed him that defendants did not wish to spend any money to perform permanent repairs (*id.*, ¶ 40).

King denies that there is no danger to the remaining tenant or the public. First, the Premises occupies a busy corner in Manhattan (*id.*, ¶ 66). Second, based on the records on file with the City and his personal observations, 201 and 203 East 38th Street and 579 and 581 Third Avenue are all

452058/2020  CITY OF NEW YORK vs. GOLDMAN, LLOYD
Motion No. 001

Page 8 of 16

[* 8]

part of the same structure (*id.*, ¶¶ 13 and 16-23). 579 and 581 Third Avenue are old-law tenement buildings that share a 55-foot-long party wall that runs east from Third Avenue (*id.*, ¶ 8). The wall extends 20 feet beyond 581 Third Avenue to form the north wall of 579 Third Avenue (*id.*). Both 579 and 581 Third Avenue were renovated and combined, with 579 Third Avenue further divided into 201 and 203 East 38th Street (*id.*, ¶ 9). The second-floor apartments at 579 and 581 Third Avenue have been combined and straddle the party wall (*id.*, ¶ 10). These apartments are accessible via an entrance with the street address of 201 East 38th Street (*id.*, ¶ 14). 579 Third Avenue contains an additional four apartments, which are accessible via an entrance with the street address of 203 East 38th Street (*id.*). Before beginning the emergency work, defendants filed an RC-50 notification with DHCR which listed a single inhabited apartment at 203 East 38th Street (*id.*, ¶ 21; NYSCEF Doc No. 46, King aff, exhibit C). King avers that he issued a partial vacate order for 579 Third Avenue for two reasons. King states that the 20-foot length of the shared wall that forms the north wall for 579 Third Avenue/203 East 38th Street did not appear damaged (NYSCEF Doc No. 43, ¶ 45), and PVE confirmed that this part of the wall did not present an imminent hazard (*id.*, ¶ 51). In addition, the sole remaining tenant at the rear of the Premises had a separate means of egress (*id.*, ¶ 46). That said, King avers that there is still a threat to the tenant should the party wall fail and collapse (*id.*, ¶¶ 50 and 52).

King avers that a permanent repair is necessary to ensure that the Premises is safe and code compliant (*id.*, ¶ 53). The measures installed by defendants are temporary, and a quarterly monitoring program of a vacant structure for 60 months may fail to yield notice of worsening underlying conditions (*id.*, ¶¶ 53, 57 and 63). Further, shoring is a stopgap measure while a more permanent repair of the structural hazard is completed (*id.*, ¶ 63). Thus, "prevention of any collapse or near-collapse situation is abundantly necessary and can be accomplished only by permanently repairing the underlying hazardous conditions" (*id.*, ¶ 59).

452058/2020  CITY OF NEW YORK vs. GOLDMAN, LLOYD
Motion No. 001

Page 9 of 16

[* 9]

## Discussion

The Nuisance Abatement Law (Administrative Code § 7-701 *et seq*.) addresses public nuisances, including "flagrant violation[s] of the building code ..., all of which interfere with the quality of life, property values and the public health, safety, and welfare" (Administrative Code § 7-701). The purpose of the law is to "create one standardized procedure for securing legal and equitable remedies relating to the subject matter encompassed by this law, without prejudice to the use of procedures available under existing and subsequently enacted laws, and to strengthen existing laws on the subject" (*id.*). The law permits the Corporation Counsel to bring a civil action to permanently enjoin a public nuisance (Administrative Code § 7-706 [a]). Under Administrative Code § 7-707 (a), "the court may grant a preliminary injunction enjoining a public nuisance within the scope of this subchapter ... where the public health, safety or welfare immediately requires the granting of such injunction."

Ordinarily, "[a] party seeking a preliminary injunction must demonstrate by clear and convincing evidence, (1) a likelihood of success on the merits, (2) irreparable injury absent the granting of the preliminary injunction, and (3) a balancing of the equities in the movant's favor" (*Gilliland v Acquafredda Enters., LLC*, 92 AD3d 19, 24 [1st Dept 2011]). However, "[a] municipality seeking a preliminary injunction to enforce compliance with its ordinances or regulations in order to protect the public interest ... need only demonstrate a likelihood of success on the merits and that the equities weigh in its favor" (*City of New York v Beam Bike Corp.*, 206 AD3d 447, 447-448 [1st Dept 2022]; *but see City of New York v Love Shack*, 286 AD2d 240, 242 [1st Dept 2001] [reasoning that the City must satisfy all three prongs before a preliminary injunction may be issued] and *City of New York v Bilynn Realty Corp.*, 118 AD2d 511, 512-513 [1st Dept 1986] ["[t]he three-pronged test for injunctive relief does not apply; no special damage or injury to the public need be alleged; and commission of the prohibited act is sufficient to sustain

452058/2020   CITY OF NEW YORK vs. GOLDMAN, LLOYD
Motion No. 001

Page 10 of 16

[* 10]

the injunction"]). The municipality need not show proof of irreparable harm (*see Beam Bike Corp.*, 206 AD3d at 448). Furthermore, "[t]he existence of an adequate remedy at law shall not prevent the granting of temporary or permanent relief" under the Nuisance Abatement Law (Administrative Code § 7-706 [a]). Applying these principles, the City has demonstrated its entitlement to a preliminary injunction under the one-, two- or three-prong tests articulated in *Bilynn Realty Corp.*, *Love Shack*, or *Beam Bike Corp.*

The definition of a "public nuisance" includes "[a]ny building ... which is in violation of ... article 301 ... of chapter 3 of title 28" (Administrative Code § 7-703 [d]). Administrative Code § 28-301.1 provides that:

> "All buildings and all parts thereof and all other structures shall be maintained in a safe condition ... The owner shall be responsible at all times to maintain the building and its facilities and all other structures regulated by this code in a safe and code-compliant manner and shall comply with the inspection and maintenance requirements of this chapter."

The Construction Codes allow the City to seek compliance through civil judicial proceedings for civil penalties, injunctive relief, or both and through "[t]he issuance and enforcement of peremptory orders for immediately hazardous, major and lesser violations" (Administrative Code § 28-201.3 [2] and [4]; *see also* Administrative Code § 28-205.1). DOB is tasked with enforcing the Building Code (New York City Charter § 643).

"[T]o establish a likelihood of success on the merits, a prima facie showing of a reasonable probability of success is sufficient" (*Bass v WV Preserv. Partners, LLC*, 209 AD3d 480, 481 [1st Dept 2022]). The allegations in the verified complaint, together with the Emergency Work Orders, IEDs, and Permanent Repair Orders, amply demonstrate the City's likelihood of success on the merits. As is relevant here, "[a] certificate in writing by the commissioner, or his or her authorized representative, shall be presumptive evidence of any matter stated therein" (Administrative Code

**452058/2020 CITY OF NEW YORK vs. GOLDMAN, LLOYD**
**Motion No. 001**

**Page 11 of 16**

[* 11]

§ 28-205.1.2.1). In addition, a Class 1 "immediately hazardous violation" is defined, in part, as one "where the violating condition poses a threat that severely affects life, health, safety, property, the public interest, or a significant number of persons so as to warrant immediate corrective action" (Rules of City of NY Dept of Buildings [1 RCNY] § 102-01 [b] [1]). Here, DOB issued Class 1 immediately hazardous violations for significant structural hazards observed at the Premises, in part, because of the serious risk of the collapse of the two buildings. The records show that nearly 80% of the shared party wall was in significant distress. DOB also observed other structural hazards at the Premises. Administrative Code § 28-301.1 imposes an obligation upon owners to maintain their properties in safe condition, and a violation of this section constitutes a public nuisance under the Nuisance Abatement Law. Despite the installation of temporary bracing and shoring, those actions do not bring the Premises into compliance with the Construction Codes. As such, the City has demonstrated its likelihood of success on the merits.

The City has also satisfied the second prong of irreparable harm. "[I]rreparable injury is presumed from the continuing existence of an unremedied public nuisance" (*Love Shack*, 286 AD2d at 242). Here, defendants installed temporary shoring intended to last somewhere between five and 10 years, only, and have not completed more permanent repairs. Defendants' engineer, PVE, acknowledged to DOB that such measures were to remain in place until such time "the buildings are demolished or the wall is repaired in such a way that the shoring could be removed" (NYSCEF Doc No. 35 at 1). Thus, it does not appear that the Premises is "maintained in a safe condition" per Administrative Code § 28-301.1.

Regarding the third prong, the court must weigh the harm to the City in the absence of injunctive relief against the harm to defendants if an injunction is issued (*McLaughlin, Piven, Vogel v Nolan & Co.*, 114 AD2d 165, 174 [2d Dept 1996], *lv denied* 67 NY2d 606 [1986], citing *Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.*, 70 AD2d 1021, 1022 [3d Dept 1979],

452058/2020 CITY OF NEW YORK vs. GOLDMAN, LLOYD
Motion No. 001

Page 12 of 16

[* 12]

*appeal dismissed* 48 NY2d 654 [1979]). Here, the balance of equities tip in the City's favor. DOB is tasked with investigating the structural integrity and stability of buildings throughout the five boroughs and with ensuring compliance with the Construction Codes. A portion of the party wall at the Premises forms the north wall of the rear part of 579 Third Avenue/203 East 38th Street. There were no visible defects in this part of the shared wall but, according the RC-50 form dated July 9, 2020 on file with DHCR, Ellen Roman is the rent-stabilized tenant in Apartment D at the Premises (NYSCEF Doc No. 46 at 5). This filing by defendants refutes their assertion that the entire Premises is vacant. Presumably, a collapse of the shared party wall (and the Premises) could endanger this tenant's safety. In addition, the Premises is located on a busy corner in Manhattan. The potential risk to the public at large should the party wall fail, thereby causing all or part of the Premises to collapse, eclipses the potential harm to defendants and establishes that the balance of equities weighs in favor of the City.

Contrary to defendants' contention, the City's remedies are not limited to enforcement proceedings brought by DOB or the New York City Department of Housing Preservation and Development (HPD) in New York City Civil Court. As noted above, the Nuisance Abatement Law permits the City to bring a civil action to enjoin a public nuisance (Administrative Code § 7-706 [a]), and Administrative Code §§ 28-201.3 and 28-205.1 allow the City to bring an action for civil penalties and injunctive relief for Construction Codes violations.

Next, defendants contend that the City has not established the extraordinary circumstances necessary for the issuance of a mandatory preliminary injunction. The purpose of a preliminary injunction is to maintain the status quo while an action is pending (*Huguenot LLC v Megalith Capital Group Fund I, LP*, 191 AD3d 530, 530 [1st Dept 2021]). Where the plaintiff seeks an order mandating specific conduct, the right to such relief must be clearly established (*Second on Second Café, Inc. v Hing Sing Trading, Inc.*, 66 AD3d 255, 265 [1st Dept 2009]). "A mandatory

452058/2020  CITY OF NEW YORK vs. GOLDMAN, LLOYD
Motion No. 001

Page 13 of 16

[* 13]

injunction should not be granted, absent extraordinary circumstances, where the status quo would be disturbed and the plaintiff would receive the ultimate relief sought, pendente lite" (*Spectrum Stamford, LLC v 400 Atl. Tit., LLC,* 162 AD3d 615, 617 [1st Dept 2018] [internal quotation marks and citation omitted]).

Mandatory injunctions have been issued where the structural integrity of a building has been compromised (*see PWLJ Inc. v Omnipoint Communications, Inc.*, 2011 WL 13272731, *9 [Sup Ct, NY County, Oct. 31, 2011, Mills, J., index No. 107622/11] [because safety was a paramount concern, the court granted a mandatory preliminary injunction that required T-Mobile to remove its cellular telephone transmitting equipment from roof of a building with significant structural issues]). Here, defendants do not expressly disagree with DOB's assessment that the Premises is in need of structural repairs. In addition to the conditions identified by DOB, PVE informed DOB that it was "concerned about the ground floor level where we see cracking in the wall" (NYSCEF Doc No. 30 at 1). Defendants only disagree with the City on the extent of the measures necessary to bring the Premises into compliance with Administrative Code § 28-301.1. Especially when coupled with the element of deference afforded to public safety officials on matters of public safety, defendants do not raise the "sharp issues of fact," necessary to defeat a motion for preliminary injunction (*Residential Bd. of Managers of the Columbia Condominium v Alden*, 178 AD2d 121, 123 [1st Dept 1991]; *see also People v. Cherkowsky*, 150 Misc 681, 683 [Mag Ct, New York Co 1934]).

Furthermore, granting the injunction does not upend the status quo. The Permanent Repair Orders directed defendants to retain personnel to evaluate the entirety of the Premises, file permits to perform repair work and begin such work by a date certain. There is no indication that defendants attempted or intended to comply. Instead, defendants insist that the temporary bracing and shoring rendered the Premises safe and that those measures would remain in place until such

[* 14]

time as defendants determined the next use for the buildings, including demolition. Directing defendants to comply with Administrative Code § 28-301.1, however, does not cause defendants to perform unnecessary work or deprive the City of the incentive to prosecute this action to its conclusion (*cf. Village of Westhampton Beach v Cayea*, 38 AD3d 760, 762 [2d Dept 2007]). Defendants own the Premises and are obligated to maintain it in safe condition. Administrative Code § 28-301.1 imposes this same obligation upon all owners whether the property is occupied, partially occupied, or vacant. Moreover, the temporary shoring and bracing does not resolve the conditions compromising the structural integrity of the Premises. In any event, the City is not seeking the ultimate relief sought in this action, as it also seeks declaratory relief, injunctive relief related to a failure to remove litter and alleged tenant harassment, and civil penalties. Furthermore, defendants do not dispute that the Premises is located on busy corner of Third Avenue and East 38th Street. The Emergency Work Orders, IEDs, and Permanent Repair Orders bear a substantial relation to City's interest in safeguarding the health, welfare, and safety of the public at large.

Finally, defendants' contention that the City's motion is not supported by an affidavit is unpersuasive. For a preliminary injunction under the Nuisance Abatement Law, it must be shown by "affidavit and such other evidence as may be submitted, that there is a cause of action for a permanent injunction abating a public nuisance within the scope of this subchapter" (Administrative Code § 7-708; *see also* CPLR 6312). The City is a governmental subdivision and if a party is a governmental subdivision, then under CPLR 3020 (d) (2), "the verification may be made by any person acquainted with the facts." This "standard ... is not synonymous with 'personal knowledge'" (*Blake v State of New York*, 134 Misc 2d 892, 893 [Ct Cl 1987]). The verification signed by the Assistant Corporation Counsel representing the City reveals that counsel read the contents of the pleadings and based its contents on information obtained from other departments of the City, statements made to him by officers or agents of the City, and from

**452058/2020  CITY OF NEW YORK vs. GOLDMAN, LLOYD**
**Motion No. 001**

**Page 15 of 16**

statements, affidavits or affirmations from other persons (NYSCEF Doc No. 1 at 18). Because "[a] 'verified pleading' may be utilized as an affidavit whenever the latter is required" (CPLR 105 [u]), the City's submission of a verified pleading, together with DOB records, is sufficient (*see State of New York v Please Me LLC*, 78 Misc 3d 1236[A], 2023 NY Slip 50432[U], *6 n 5 [Sup Ct, Albany County 2023], citing *Blake*, 134 Misc 2d at 893).

The court has considered the other arguments advanced by the parties and finds them unavailing.

Accordingly, it is ordered that the motion of plaintiff City of New York for preliminary injunction (motion sequence no. 001) is granted.

Settle order on notice.

| 2/14/2024 | | | |
|---|---|---|---|
| DATE | | Hon. James E. d'Auguste, J.S.C. | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
| | ☒ GRANTED ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☒ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

452058/2020   CITY OF NEW YORK vs. GOLDMAN, LLOYD
Motion No. 001

Page 16 of 16

[* 16]